VETERAN ARMS, LLC

VERSUS

ROOTS PRODUCTIONS, LLC, FULL FLASH
FILM SERVICES OF LOUISIANA, INC.,
GRAHAM NORRIS, JR., BRYAN
CARPENTER AND MOREY F. BULTER, JR.

NO. 19-CA-179

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 756-973, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING


March 04, 2020


**ROBERT A. CHAISSON**
**JUDGE**


Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Molaison, Jr.


**VACATED AND REMANDED**

**RAC**

**MEJ**

**JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
VETERAN ARMS, LLC
    J. Douglas Sunseri
    Richard J. Wolff

COUNSEL FOR DEFENDANT/APPELLANT,
FULL FLASH FILM SERVICES OF LOUISIANA, INC.
AND BRYAN CARPENTER
    Andrew T. Lilly

**CHAISSON, J.**

This case involves a contract dispute regarding the provision of props and services for the filming of a television show. Defendants Bryan Carpenter and Full Flash Film Services of Louisiana, Inc. ("Full Flash") appeal an August 27, 2018 judgment of the trial court granting a motion for partial summary judgment in favor of plaintiff Veteran Arms, LLC ("Veteran Arms"). For the following reasons, we vacate the judgment and remand the case for further proceedings.

FACTS AND PROCEDURAL HISTORY

On January 13, 2016, Veteran Arms filed a petition for damages against Roots Productions, LLC; Full Flash; Graham Norris, Jr.; Bryan Carpenter; and Morey F. Butler, Jr., in which Veteran Arms alleged that during the course of filming of a historical reenactment miniseries in the late summer and early fall of 2015, it had provided or agreed to provide defendants (more particularly Full Flash and Bryan Carpenter) various firearms and historical props including flintlock small arms, Civil War uniforms, grenades, artillery ammunition, muskets, and cannons. Disputes arose concerning the payment for the rental and/or purchase of the equipment as well as Mr. Carpenter's purported unauthorized use of Veteran Arms' credit account. Communications between the parties broke down in late September of 2015. Thereafter, Charles Misulia, a representative and member of Veteran Arms, travelled to New Orleans and recovered some, but not all of the rented items. In its petition, Veteran Arms sought $184,332.11, as well as other damages and attorney's fees for breach of contract, personal injury under La. C.C. art. 2315, fraud, misrepresentation, conversion, theft, detrimental reliance, unjust enrichment, and violations of the Louisiana Unfair Trade Practices Act.

Defendants filed an answer to the petition in which they denied Veteran Arms' allegations. Full Flash, Mr. Carpenter, and Mr. Butler filed a demand-in-

reconvention against Veteran Arms and Mr. Misulia, alleging breach of contract and other damages.[1]

These filings were followed by a contentious discovery period which included a January 19, 2017 judgment against Full Flash on a motion for contempt filed by Veteran Arms for failure to respond to requests for production and inspection of documents.

On October 26, 2017, Veteran Arms filed a motion for partial summary judgment against the remaining defendants: Full Flash, Mr. Carpenter, and Mr. Butler. The motion for partial summary judgment specified that it concerned only some of the claims for breach of contract, violations of the Louisiana Unfair Trade Practices Act, and failure to render payment on open account. These claims on the motion for partial summary judgment amounted to $108,819.15. In its motion, Veteran Arms reserved rights against defendants for the value of the remainder of its claims against them.

In support of its motion for partial summary judgment, Veteran Arms attached as evidence an affidavit of Mr. Misulia, which included various documents as exhibits: transcripts of text message conversations between Mr. Misulia and Mr. Carpenter, invoices issued by Veteran Arms to Mr. Carpenter, copies of rental and services agreements signed by Mr. Misulia and Mr. Carpenter, photographs of the equipment recovered from filming, account statements, and invoices issued by Full Flash to Roots Production for use of Veteran Arms' equipment. Defendants did not file any opposition to the motion for partial summary judgment.

The trial court heard the motion on June 19, 2018. No one appeared on behalf of Full Flash at this hearing. Dawn Carpenter attempted to appear on behalf

---

[1] Roots Productions and Graham Norris, Jr. were subsequently dismissed voluntarily as defendants from the case.

of her husband at the hearing, but Mr. Carpenter himself did not make an appearance. Mr. Butler represented himself and disputed the factual assertions made by Veteran Arms, particularly whether he had any ownership interest in Full Flash.

Although the trial court heard argument from Mr. Butler and from counsel for Veteran Arms, no witnesses testified and no additional evidence was introduced by anyone at the hearing. At the hearing, the trial court orally ruled in favor of Veteran Arms and against Full Flash.[2] Additionally, the trial court found that Veteran Arms provided sufficient evidence to warrant piercing the corporate veil of Full Flash, and therefore rendered judgment against Mr. Carpenter and Mr. Butler in their individual capacities. The trial court took the issue of attorney's fees under advisement. After ruling in favor of Veteran Arms, the court then proceeded to make factual inquiries concerning identification of equipment that was not recovered for the purposes of determining how much, if any, of the $108,819.15 awarded should be considered part of Veteran Arms' conversion claim. Additionally, the trial court requested post-trial memoranda to provide clarification as to which items of damages related to Veteran Arms' conversion claim and Unfair Trade Practices claim, and the appropriate amount of attorney's fees.

The trial court rendered its written judgment on August 27, 2018, granting the motion for partial summary judgment, awarding $108,596.52 in damages and $28,135.00 in attorney's fees, and dismissing defendants' reconventional demands with prejudice.

---

[2] At the time that it made its oral ruling, the trial court did not specify the dollar amount of the judgment in favor of Veteran Arms; however, its subsequent written judgment was for the full amount requested, less a $222.63 discrepancy that the trial court found between Mr. Misulia's affidavit and the chart summarizing the ten items of damages claimed.

On September 14, 2018, Full Flash and Mr. Carpenter filed a motion for new trial. The memorandum in support of the motion included attached documents, emails, invoices, and affidavits which purportedly contradicted the evidence put forth at the hearing on the motion for partial summary judgment. On January 30, 2019, the trial court denied the motion for new trial. On February 5, 2019, the trial court certified the August 27, 2018 partial judgment as final as contemplated by La. C.C.P. art. 1915(B) and granted Full Flash and Mr. Carpenter a devolutive appeal from that judgment.

DISCUSSION

Appellate courts review summary judgments *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *In re Succession of O'Krepki*, 16-50 (La. App. 5 Cir. 5/26/16), 193 So.3d 574, 577. After an adequate opportunity for discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and is favored in the law. La. C.C.P. art. 966(A)(2). Even though the summary judgment procedure is favored, it is not a substitute for a trial on the merits. *Manis v. Zemlik*, 11-799 (La. App. 5 Cir. 5/8/12), 96 So.3d 509, 512. Despite the legislative mandate that summary judgments are favored, factual inferences reasonably drawn from the evidence

must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. *Id.*

Although Veteran Arms' suit made claims against defendants alleging total damages in the amount of $184,332.11, it filed its motion for partial summary judgment seeking $108,819.15, contending that amount was the totality of its claims "backed up by documentation." In its memorandum in support of its motion, it further explained that its "Motion for Partial Summary Judgment only addresses the breach of contract and failure to render payment on an open account portions of [its] claim against [defendants]."

In support of its motion, Veteran Arms attached the affidavit of Mr. Misulia which identified ten separate items of alleged damages it sustained as a result of defendants' breach of their agreements. Each separate item included a stated dollar amount for that item of damage, a brief description of the basis of the claim for that item, and reference to an attached exhibit which purported to support that claim. The total sum of these ten items of alleged damages is the $108,819.15 requested by Veteran Arms in its motion for partial summary judgment. No other evidence was introduced by Veteran Arms in support of its motion for partial summary judgment.[3]

Upon our *de novo* review of Veteran Arms' motion for partial summary judgment, as supported only by the affidavit of Mr. Misulia and the exhibits attached thereto, we conclude that there remain genuine issues of material fact which preclude summary judgment as requested by Veteran Arms. The most notable example of genuine issues of material fact relate to the single largest item

---

[3] We particularly note that there was no further testimony from Mr. Misulia, either by way of deposition or live testimony at the hearing on the motion, to further explain or clarify the basis for each item of alleged damage. Although counsel for Veteran Arms, in its memorandum in support of the motion, expounded upon and provided further explanation for many of the claims, we note that the information contained in the argument of counsel but not contained in Mr. Misulia's affidavit or the attached documents is not valid summary judgment evidence. We therefore do not consider additional facts provided in counsel's arguments as evidence in our *de novo* review.

of alleged damages in the amount of $33,600.00 for "training and advising services," which is nearly one-third of the total amount requested by Veteran Arms in its motion for partial summary judgment.

The single paragraph of Mr. Misulia's affidavit that relates to the "training and advising services" agreement states:

> Veteran Arms is owed $33,600.00 on the written contract for training and advising services signed by Charles Misulia and Bryan Carpenter. The written contract memorializing the agreement is attached as Exhibit J and is a true and accurate copy of the signed contract. Further, text messages on September 17, 2015 - September 19, 2015 and attached as Exhibit A confirm Full Flash's acceptance of the trainers *to be provided* for the contract.

(emphasis added)

The contract for "training and advising services," attached as Exhibit J, indicates that it was signed by Mr. Misulia and Mr. Carpenter on September 22, 2015, and states that the services were "to begin on or around Sept 29th or as determined and running at least through the end of the Battle of Fort Pillow Sequences on Oct 22nd." Furthermore, it does not contain a provision for liquidated damages in the event of a breach of the agreement.

The email exchanges between Mr. Misulia and Mr. Carpenter indicate that their communication and agreements broke down as of September 25, 2015, three days after the signing of the "training and advising services" agreement. Mr. Misulia's affidavit indicates that he went to pick up certain equipment on September 29, 2015, due to defendants' alleged breach of their agreements, which was before any of the "training and advising services" were to be provided. Mr. Misulia does not allege in his affidavit that any "training and advising services" were provided to the defendants, but rather that these services were *to be provided*. Nor does Mr. Misulia's affidavit allege that any costs were incurred by Veteran Arms in preparation for providing "training and advising services." Furthermore, there is absolutely no explanation in Mr. Misulia's affidavit as to why Veteran

Arms would be entitled to the full value of the contract (*i.e.*, both its unexpended costs and its anticipated profit) for these future services that Veteran Arms never rendered.

We similarly find genuine issues of material fact regarding Veteran Arms' second largest item of alleged damages in the amount of $25,300.00 for the cannon rental. The evidence submitted by Veteran Arms indicates that the majority of that rental item was to be provided in October of 2015, and its supporting documentation regarding that item is at best confusing as to why Veteran Arms would be entitled to the full value of that contract.

Regarding the item of damages for the purchase of non-refundable uniforms in the amount of $15,775.00, Veteran Arms provides no evidence that these uniforms were delivered to or retained by defendants, thus raising the question as to whether Veteran Arms is entitled, as a matter of law, to the full purchase price of uniforms that it now retains. Although Mr. Misulia alleges that the purchase price from his vendor is non-refundable, he makes no allegation that the uniforms that Veteran Arms now retains have no value, nor does he provide an explanation as to why Veteran Arms is entitled to an award for the full purchase price of those uniforms while retaining ownership of them.

Additionally, we note that after receipt and review of Mr. Misulia's affidavit with the attached exhibits, which is the only evidence pertinent to the trial court's determination of whether genuine issues of material fact remain, together with a supporting memorandum providing argument as to why Veteran Arms was entitled to partial summary judgment, the trial court was compelled to request an additional post-trial memorandum from Veteran Arms to further clarify which portions of its claims related to conversion and Unfair Trade Practices. We agree with the assessment made by the trial court at the time of the hearing on the motion for partial summary judgment, that Mr. Misulia's affidavit with attached exhibits

leaves unanswered questions regarding Veteran Arms' conversion and Unfair Trade Practices claims.

Subsequent to the hearing, although Veteran Arms supplied the trial court, by way of its post-trial memorandum, with additional *argument* regarding its conversion and Unfair Trade Practices claims and its entitlement to attorney's fees, no additional *evidence* was supplied by Veteran Arms.[4]  Regardless of whether it was proper for the trial court to rely upon subsequent argument of counsel to resolve its unanswered questions regarding these claims, we find that there remain genuine issues of material fact regarding these claims, such that it was error for the trial court to reclassify a portion of the total award as damages for conversion and Unfair Trade Practices and thereafter award attorney's fees.  Consequently, there remains a question as to whether Veteran Arms is entitled, as a matter of law, to an award of attorney's fees.

CONCLUSION

Finding a number of genuine issues of material fact upon our *de novo* review, we conclude that Veteran Arms is not entitled to partial summary judgment as requested.  Accordingly, we vacate the judgment of the trial court and remand the case for proceedings consistent with our decision herein.  In so doing, we note that our decision does not vacate or in any way abrogate prior rulings and judgments of the trial court holding defendants in contempt for their egregious failure to comply with court-ordered discovery.

**<u>VACATED AND REMANDED</u>**

---

[4] In its reasons for judgment, the trial court, apparently relying upon the argument of counsel in the post-trial memorandum, reclassified a portion of the $108,596.52 that it found constituted damages for Veteran Arms' contractual claims, as damages for its conversion and Unfair Trade Practices claims, in the amounts of $8,331.50 and $81,494.06, respectively.  Based upon these reclassifications, the trial court awarded Veteran Arms $28,135.00 in attorney's fees, which were not otherwise provided for by any contractual provisions.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 4, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-179

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
J. DOUGLAS SUNSERI (APPELLEE)          ANDREW T. LILLY (APPELLANT)

**MAILED**
RICHARD J. WOLFF (ATTORNEY)
3000 18TH STREET
METAIRIE, LA 70002